[Cite as *In re G.B.*, 2022-Ohio-1919.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| IN RE: G.B. | : | JUDGES: |
| | : | Hon. Earle E. Wise, Jr., P.J. |
| | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | |
| | : | |
| | : | Case No. 2022 CA 0004 |
| | : | |
| | : | O P I N I O N |


CHARACTER OF PROCEEDING:        Appeal from the Court of Common
                                Pleas, Juvenile Division, Case No.
                                2020 DEP 00019



JUDGMENT:                       Affirmed



DATE OF JUDGMENT:               June 7, 2022



APPEARANCES:

For Plaintiff-Appellant                 For Defendant-Appellee

JOHN C. O'DONNELL, III                  CHRISTOPHER W. ZUERCHER
10 West Newlon Place                    731 Scholl Road
Mansfield, OH  44902                    Mansfield, OH  44902

*Wise, Earle, P.J.*

{¶ 1} Appellant, J.B. appeals from the January 4, 2022 judgment entered in the Richland County Court of Common Pleas, Juvenile Division, which terminated all parental rights, privileges and responsibilities of J.B. and ordered permanent custody of G.B. be granted to the Richland County Department of Job and Family Services (herein Agency).

{¶ 2} This case comes to us on the expedited calendar and shall be considered in compliance with App.R. 11.2(C).

FACTS AND PROCEDURAL HISTORY

{¶ 3} G.B., born December 28, 2019, is the biological child of J.B. (herein Father) and M.Z. (herein Mother).

{¶ 4} G.B. was placed in the emergency shelter care of Agency on February 4, 2020. The following day, a complaint was filed alleging G.B. was abused and dependent. On April 16, 2020 G.B. was found to be abused and dependent and was placed in the temporary custody of the Agency.

{¶ 5} As to Father, the circumstances leading to a finding of abuse and dependency included physical abuse, economic instability, exposing G.B. to deplorable conditions, cognitive delays, and lack of proper parenting and decision-making abilities. On January 31, 2020, G.B. sustained significant injuries while in Father's care including multiple new bone fractures, bone fractures in various stages of healing, numerous internal injuries including subdural hematomas and intercranial hemorrhages, and multiple bruises to his skull, face, and body. Before G.B.'s presentation at the hospital on January 31, 2020, unexplained injuries were observed by G.B.'s pediatrician at his one

week and one-month visits. Neither Father nor Mother had plausible explanations for the child's injuries. Father later pled guilty to two counts of felonious assault against G.B. Because Father was incarcerated for harming G.B. he was not included in a case plan with the Agency.

{¶ 6}   Upon first being placed with his foster parents, G.B. required frequent medical visits to monitor his brain bleeds and other injuries, as well as physical therapy. G.B. also demonstrated mental trauma in the form of night terrors which would subside but then resume after visits with mother, clenching his fists and holding his breath when being held, and appearing generally fearful when picked up. Despite these initial challenges, G.B. has thrived in his foster placement and has bonded with his foster family. He has lived with his foster family since he was five and a half weeks old, and his foster parents wish to adopt G.B. Transcript of permanent custody hearing (T.) 38-44.

{¶ 7}   On May 24, 2021, the Agency filed a motion for permanent custody. On July 22, 2021, Father filed a motion requesting G.B. be placed in the legal custody of paternal grandmother S.C. On August 5, 2021, Father filed a motion requesting G.B. be placed in the temporary legal custody of paternal aunt, S.C. On September 27, 2021, and November 15, 2021, a hearing was held on these motions.

{¶ 8}   At the hearing, Mother agreed to termination of her parental rights. The magistrate then heard testimony from Mother, Katie Craig who is the Agency's ongoing case worker, foster mother N.Y., paternal grandmother S.C. and paternal aunt, S.C.

{¶ 9}   Relevant to this appeal, Craig testified the Agency looked for appropriate kinship placement for G.B., but none were found to be appropriate. She testified paternal grandmother has an open case with Knox County Children's Services and has extensive

history with various Children's Services Agencies. Grandmother was evaluated and disqualified as a kinship placement. As for paternal aunt, the Agency found she had no stable environment in which to raise G.B. T. 21-22.

{¶ 10} Paternal grandmother testified on direct examination she has four children. She admitted she had an open case with the Agency, but stated it was based on a "falsified" claim by her daughter. T. 53. Grandmother also testified she does not have custody of one of her sons who is placed outside the home due to behavioral issues and will not be returned home "until he behaves." T. 53. Grandmother is employed and works 6:00 a.m. to 5:30 p.m. T. 55. She stated she talks to Father frequently, and Father had told her he did not hurt G.B. She stated she did not know what to believe, but would not allow Father access to G.B. if she were granted legal custody. T. 55. She admitted she did not know what happened to G.B. T. 64-65.

{¶ 11} Grandmother admitted she had a pending motion in Knox County for her son to enter a planned permanent living arrangement. T. 57. She further admitted there had been 39 referrals to the Agency regarding her and her children wherein she was identified as an alleged perpetrator. T. 58, 60. Grandmother blamed the referrals on her husband who she does not live with but to whom she is still married. T. 59. She alternately claimed her husband would not agree to a divorce and she could not afford divorce proceedings. T. 59-61. Grandmother stated she and her boyfriend are the only occupants of her home. T. 62. She stated she speaks to Father every couple of days and stated Father denies harming G.B. T. 63. Grandmother admitted to using marijuana a week before the hearing. T. 76.

{¶ 12} Grandmother had not seen G.B. since he was a month old and did not think it was in his best interest to remove him from his foster home. But at the same time, she did not think it was fair that she would be unable to see her grandson grow. T. 69.

{¶ 13} Paternal aunt testified she is 18 years old, works full time from 7:00 a.m. to 5:30 p.m., and lives with her boyfriend in a two-bedroom apartment. T.78 Paternal aunt had been in her apartment for one month at the time of the hearing. T. 83. She had no clear plan for child care while she works and also had no clear plan regarding keeping G.B. safe from Father. T. 84. She was not convinced Father was to blame for G.B.'s injuries. She further believed it would be in G.B.'s best interest to be removed from his foster family and placed with "actual family" or to at least be around his "actual family." T. 86-88. She acknowledged it would be traumatic for G.B. to be removed from his foster family, but believed he would understand when he got older. T. 95.

{¶ 14} At the conclusion of evidence, the Guardian ad Litem recommended it would be in G.B.'s best interests to grant the Agency's motion for permanent custody.

{¶ 15} The magistrate took the matter under advisement and on December 16, 2021 issued a 13-page decision. The magistrate found neither legal custody to paternal grandmother nor temporary legal custody to paternal aunt would be in G.B.'s best interest. The magistrate noted grandmother and aunt are strangers to G.B. and they appear to be interested only in what they want rather than what is best for G.B. The magistrate further noted grandmother and aunt demonstrated through their testimony and demeanor that they are unwilling to protect G.B. from future contact with Father. Additionally, the magistrate found paternal aunt's desire to seek temporary legal custody of G.B. fails to provide G.B. with the permanency he deserves and also fails to consider G.B.'s best

interests. The magistrate thus terminated the parental rights of both Mother and Father, and denied Father's motion for legal custody to paternal grandmother as well as Father's motion for temporary legal custody to paternal aunt.

{¶ 16} On January 4, 2022, the trial court approved the magistrate's decision. Father timely filed this appeal. He raises one assignment of error as follows:

I

{¶ 17} "THE TRIAL COURT ERRED BY FAILING TO FIRST CONSIDER THE AVAILABILITY OF THE CHILD'S EXTENDED FAMILY MEMBERS FOR LEGAL CUSTODY IN LIEU OF PERMANENT CUSTODY TO CHILDREN SERVICES"

{¶ 18} In his sole assignment of error, Father argues the trial court failed to adequately consider legal custody to either paternal grandmother or paternal aunt. We disagree.

Permanent Custody

{¶ 19} R.C. 2151.414(B)(1) states permanent custody may be granted to a public or private agency if the trial court determines by clear and convincing evidence at a hearing held pursuant to division (A) of R.C. 2151.414, that it is in the best interest of the child and any of the following apply:

> (a) The child is not abandoned or orphaned* * *and the child cannot
> be placed with either of the child's parents within a reasonable time
> or should not be placed with the child's parents.
> (b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period* * *

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶ 20} Therefore, R.C. 2151.414(B) provides a two-pronged analysis the trial court is required to apply when ruling on a motion for permanent custody. In practice, the trial court will determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶ 21} R.C. 2151.414(D) governs "best interests" and states the following:

(D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;

(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 22} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. See also, *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 361 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a

reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross* at 477.

{¶ 23} Here, R.C. 2151.414(B)(1)(d) applies because G.B. was in the temporary custody of the Agency in excess of twelve or more months of the consecutive twenty-two-month period. Father does not dispute this fact. This court has adopted the position that proof of temporary custody with an agency for twelve or more months of a consecutive twenty-two-month period, standing alone is sufficient to award permanent custody. *In the Matter of A.S., V.S., and Z.S.*, 5th Dist. Delaware No. 13 CAF 050040, 2013-Ohio-4018.

{¶ 24} Even if that were not true, contrary to Father's argument, the magistrate did consider the possible availability of kinship placement. As set forth in our statement of facts above, both grandmother and aunt are strangers to G.B. Grandmother has a long history of involvement with various county children's services agencies and had an open case with Knox County at the time of her testimony. Grandmother admitted to using marijuana a week before the permanent custody hearing. She took no responsibility for her history with children's services and placed the blame on her husband. While Grandmother acknowledged it was within G.B.'s best interest to remain with his foster family, she also felt it was unfair that she would not be able to see him grow.

{¶ 25} Paternal aunt works full time and had no concrete plan for child care while she works. At the time of the hearing, she had just moved into an apartment with her boyfriend of 7 months. While aunt stated she understood she was a complete stranger to G.B. and acknowledged it would be traumatic for G.B. to be removed from the only family he has ever known, she felt G.B. needed to be with "actual family" and would understand

the decision when he was older. Aunt also was not convinced Father was responsible for G.B. injuries and had no clear plan to keep G.B. safe from Father.

{¶ 26} Meanwhile, the record reflects G.B. is thriving in his foster home. His needs are being met, he is bonded with his foster family, and his foster family wishes to adopt him.

{¶ 27} Given the forgoing, we find the trial court properly considered the possible availability of G.B.'s family members for legal custody in lieu of permanent custody. We further find the trial court did not abuse its discretion by denying both Father's motion for legal custody to paternal grandmother and Father's motion for temporary legal custody to paternal aunt as not being in G.B.'s best interest.

{¶ 28} The sole assignment of error is overruled.

{¶ 29} The decision of the Richland County Court of Common Pleas Juvenile Division is affirmed.

By Wise, Earle, P.J.

Wise, John, J. and

Baldwin, J. concur.

EEW/rw